**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

**JOSEPH DAVIS,**

**Plaintiff,**

**-and-**

**VIDA SHOES INTERNATIONAL, INC.,**

**Defendant.**

---------------------------------------------------------------x

**06 Civ. 6391**

**STATEMENT OF UNDISPUTED FACTS PURSUANT TO RULE 56**

Defendant Vida Shoes International, Inc. ("Vida") submits this Statement of Undisputed Facts pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## PROCEDURAL HISTORY

1. This action was commenced by the filing of a Summons and Complaint dated August 18, 2006 (Dabah Aff., ¶1, Ex. A)[1].

2. The Complaint alleges that Vida discriminated against plaintiff on the basis of his race (African-American) and religion (Islam) in violation of 42 U.S.C. §1981 ("§1981"), the New York Executive Law § 296 et. seq. (the New York State Human Rights Law or "HRL") and the New York City Administrative Code ("Administrative Code") (Dabah Aff., ¶2, Ex. A).

3. On or about September 25, 2006, Vida filed an Answer and a Counterclaim seeking recovery from plaintiff of $10,200 in outstanding loans made to plaintiff by Vida over the course of his employment (Dabah Aff., ¶3, Ex. B).

4. Plaintiff filed a Reply to the Counterclaim on or about October 10, 2006 (Dabah Aff., ¶3, Ex. C).

---

[1] References herein to the Affidavit of Solomon Dabah and the exhibits annexed thereto submitted with the moving papers are denoted "Dabah Aff., ¶__, Ex. __."

## BACKGROUND INFORMATION

5. Vida is a manufacturer and distributor of men's and women's footwear (Dabah Aff., ¶5).

6. In or about December 1998, Vida obtained a license from Phat Fashions, LLC (now Kellwood, Inc.), a company founded and operated by Russell Simmons, to design, manufacture and distribute footwear under the Phat Farm label (Dabah Aff., ¶6).

7. Because of its association with Mr. Simmons and the hip hop music industry, the Phat Farm label is targeted to the young, urban consumer (Dabah Aff., ¶6).

8. The Phat Farm division of Vida was initially very successful and by 2003 was enjoying a record volume of sales (Dabah Aff., ¶7).

9. Somi Kim (Asian), a shoe designer employed by Vida since June 1999, was assigned as the Manager of the Phat Farm division (Dabah Aff., ¶8).

10. By early 2004, Ms. Kim's annual salary was $450,000 (Dabah Aff., ¶8).

11. In late 2003, Vida hired two (2) junior designers, Lester Carlton (African-American) at a salary of $41,500 and Derrick Edwards (African-American) at a salary of $52,500 to design men's footwear for Phat Farm (Dabah Aff., ¶8).

12. In early 2004, Vida's Vice President, Solomon Dabah contacted plaintiff to inquire about his interest in doing work as a freelance designer of men's footwear for the Phat Farm division (Dabah Aff., ¶9).

13. Plaintiff had worked in the industry as a designer of urban footwear for a number of footwear companies, including Fila and Anthony L, the company that designs the Fubu brand of athletic shoe (Dabah Aff., ¶9).

14. At the time, plaintiff had his own footwear design business (Dabah Aff., ¶10).

15. By February 2004, plaintiff had entered into a freelance arrangement with Vida, preparing concepts for Phat Farm men's footwear at a monthly contract rate of $5,000 (Dabah Aff., ¶11).

16. In or about May 2004, Vida hired two (2) additional designers for Phat Farm, Jacob George (Asian) at a salary of $55,000 and Elizabeth Gavigan (Caucasian) at a salary of $95,000 (Dabah Aff., ¶12).

17. Mr. George was hired to design men's footwear on a team with Mr. Lester and Mr. Edwards, while Ms. Gavigan was hired to design women's footwear (Dabah Aff., ¶12).

18. In or about September 2004, Mr. Dabah offered plaintiff full-time employment in the Phat Farm division (Dabah Aff., ¶13).

19. Plaintiff was offered a salary of $100,000 (Dabah Aff., ¶14).

20. Mr. Dabah told plaintiff that if the Phat Farm brand continued to grow, the company would consider additional compensation, either as an increase in his salary or a bonus (Dabah Aff., ¶14).

21. Plaintiff accepted a full-time position with Vida as a Senior Designer at an annual salary of $100,000 (Dabah Aff., ¶15).

22. Plaintiff's salary was the highest of all the designers in the division (Dabah Aff., ¶15).

23. Plaintiff was assigned to head the team of men's designers consisting of himself, Mr. Edwards, Mr. Lester and Mr. George and in or about 2005, was also asked to work on projects for the Run Athletics brand of footwear (Dabah Aff., ¶16).

24. In or about March 2005, plaintiff's salary was increased to $150,000 per year (Dabah Aff., ¶17).

25. He was given this increase notwithstanding the fact that sales revenue for Phat Farm was not growing, but was beginning to decline (Dabah Aff., ¶17).

26. In or about June 2005, Vida hired Arild Dietrichson (Caucasian) as a Senior Designer for the Phat Farm division at an annual salary of $125,000 (Dabah Aff., ¶18).

27. Mr. Dietrichson had previously worked as a footwear designer at Adidas and relocated with his family from Portland, Oregon to join Vida (Dabah Aff., ¶18).

28. In or about September 2005, Vida hired Michael Jonte (African-American) as Brand Manager at an annual salary of $210,000 (Dabah Aff., ¶19).

29. Mr. Jonte was responsible for product development of the Phat Farm, Baby Phat, Head, Run Athletics and K1X brands (Dabah Aff., ¶19).

30. During calendar year 2004, Vida shipped 3,543,532 pairs of Phat Farm shoes for gross sales revenues of $86,393,390.82 (Dabah Aff., ¶20).

31. During calendar year 2005, Vida shipped 2,360,857 pairs of shoes for gross sales revenues of $52,900,586.23, a decrease of more than $34,000,000 in revenue (Dabah Aff., ¶20).

32. Sales for each calendar year are based in part on orders booked during the previous year (Dabah Aff., ¶21).

33. The sales volume for 2004 reflected strong orders during the second half of 2003 and first half of 2004 and, conversely, the drop in the sales volume for 2005 reflected a steep decline in orders booked during the second half of 2004 and first half of 2005 (Dabah Aff., ¶21)

34. Based on orders booked during the second half of 2005, Vida projected an even steeper decline in Phat Farm sales volume for calendar year 2006 (Dabah Aff., ¶22).

35. For calendar year 2006, Phat Farm sold only 788,154 pairs of shoes for gross sales revenues of $14,591, 550, representing a further decline of $38,000,000, and a total decline since 2004 of $72,000,000 (Dabah Aff., ¶22, Ex. D).

36. Part of Mr. Jonte's responsibilities as Brand Manager was to review the organization of the brand divisions under his supervision and make recommendations for any restructuring he believed would improve the efficiency of those brands and the company as a whole (Dabah Aff., ¶23).

37. In late 2005, Mr. Jonte presented a Proposed Organizational Structure for the Phat Farm, Baby Phat Athletic, Run Athletic and Head brands (Dabah Aff., ¶23, Ex.E).

38. Mr. Jonte recommended the elimination of the positions of Ms. Kim, Mr. Edwards and plaintiff and the promotion of Mr. Dietrichson to a newly created position as Design Director of the Phat Farm, Baby Phat and Head divisions (Dabah Aff., ¶25, Ex. E).

39. Mr. Dietrichson was promoted to the Design Director position in March 2006 and given an increase to $140,000, $10,000 less than plaintiff's final salary as a Senior Designer (Dabah Aff., ¶28).

40. Ms. Kim and Mr. Edwards were terminated as of February 10, 2006 and plaintiff was terminated as of February 17, 2006 (Dabah Aff., ¶30).

41. Mr. Dabah and Kane Wu (Asian), Vida's Chief Financial Officer, explained to plaintiff that the division was undergoing a reorganization and his position, which was then the most highly compensated designer position in Phat Farm, was being eliminated (Dabah Aff., ¶31).

42. Plaintiff offered to take a pay cut in order to save his job, but Mr. Dabah declined that offer (Dabah Aff., ¶31).

43. Approximately one month later, on or about March 24, 2006, Mr. Lester resigned his position (Dabah Aff., ¶33).

44. On or about April 17, 2006, Vida hired Roosevelt Brown (African-American) as a designer at an annual salary of $90,000 to work with Jacob George, the remaining designer, designing men's shoes (Dabah Aff., ¶33).

45. Thus, between early February 2006 and the end April 2006, the aggregate annual salaries of the Phat Farm division had been decreased from $969,000 to $280,000 (including the salary of Mr. Dietrichson who was also serving as Design Director for two (2) other divisions) (Dabah Aff., ¶33).

46. Mr. George and Ms. Gavigan both resigned their employment in or about October 2006. Mr. Brown resigned his employment on May 17, 2007 (Dabah Aff., ¶34).

47. No other designers have been hired for the Phat Farm division (Dabah Aff., ¶34).

48. Mr. Jonte was terminated in or about November 2006 (Dabah Aff., ¶35).

49. Mr. Dietrichson was terminated in or about April 2007 (Dabah Aff., ¶35).

50. On one occasion, Mr. Dabah yelled at Mr. Lester to get off the phone to join a meeting ((Dabah Aff., ¶41, Ex. A, par. 21).

51. Plaintiff does not know if Mr. Dabah yelled at Mr. Lester because of his race (Dabah Aff., ¶41, Ex. F, Pl. Tr., p. 168).

52. Vida has used the same factories to manufacture its shoes for many years (Dabah Aff., ¶46, Ex. F, Pl. Tr., pp. 88-95).

53. Plaintiff was given adequate staff to perform his work (Dabah Aff., ¶47, Ex. F, Pl. Tr., pp. 86-87).

54. Plaintiff does not know if there was anything racist about the incident in which Dabah "tackled" him (Dabah Aff., ¶48, Ex. F, Pl. Tr., pp. 140)

55. Of the six (6) individuals who generally attended design meetings, two (2) – Eddie Torres, Director of Research and Tania Hutchinson, Director of Marketing – are African-American (Dabah Aff., ¶49, Ex. F, Pl. Tr., pp. 146).

56. Plaintiff was excluded from the design meetings by Somi Kim because she believed his participation was unnecessary and because he was frequently in disagreement with the status quo (Dabah Aff., ¶50, Ex. F, Pl. Tr., pp. 147-149)

57. Victor Dabah was not plaintiff's supervisor and did not participate in the decision to terminate his employment (Dabah Aff., ¶51).

58. Michael Silverman was not plaintiff's supervisor and did not participate in the decision to terminate his employment (Dabah Aff., ¶52).

59. Michael Jonte's decision to exclude plaintiff from the trip to Japan was not racial (Dabah Aff., ¶53, Ex. F, Pl. Tr., pp. 137).

60. Two (2) of the four individuals who participated in the business trip to Japan are African-American (Dabah Aff., ¶53, n. 4).

61. Mr. Jonte was cordial and understanding when plaintiff informed him that he had to miss a sales meeting in January 2006 because of a religious holiday (Dabah Aff., ¶58, Ex. F, Pl. Tr., pp. 118-199).

62. In an email, Mr. Dietrichson said that if plaintiff had attended the sales meeting, been timely with his merchandising grid and talked to the rest of the team, he would have known the status of Phat Classic (Dabah Aff., ¶58, Ex. G).

**PLAINTIFF'S OUTSTANDING LOANS**

63. Over the course of his employment with Vida, plaintiff borrowed a total of $25,000 from the company, as follows:

- September 24, 2004 - $4,000
- October 29, 2004 - 500
- November 8, 2004 - 10,000
- January 14, 2005 - 5,000
- March 21, 2005 - 2,500 (payable to R & G Brenner Tax Consultants on plaintiff's behalf)
- September 28, 2005 - 3,000

(Dabah Aff., ¶61, Ex. H)

64. Plaintiff agreed to pay back his loans at the rate of $400 per biweekly payroll (Dabah Aff., ¶62).

65. Prior to his termination in February 2006, plaintiff had paid back a total of $14,800 of his loans, leaving a balance of $10,200 unpaid (Dabah Aff., ¶62, Ex. F, Pl. Tr., pp. 169-176).

**Dated: New York, N.Y.**
**June 15, 2007**

**Respectfully submitted,**

**KANE KESSLER, P.C.**
**Attorneys for Vida Shoes International, Inc.**

By: ______________________
**Judith A. Stoll (JS – 9896)**
**1350 Avenue of the Americas**
**New York, N.Y. 10019**
**Tel: (212) 519-5165**
**Fax (212) 245-3009**

**AFFIDAVIT OF SERVICE BY REGULAR MAIL**

STATE OF NEW YORK )
) ss.:
COUNTY OF NEW YORK )

I, Cara M. Brownell, being duly sworn, say:

I am not a party to the within action, am over 18 years of age, and reside in Brooklyn, New York.

On June 15, 2007, I served the within:

**STATEMENT OF UNDISPUTED FACTS PURSUANT TO RULE 56**

by delivering a true copy thereof, enclosed in a post-paid wrapper, in an official depository under the exclusive care and custody of the U.S. Postal Service within New York State, addressed to each of the following:

To: **Vincent E. Bauer, Esq.**
**475 Park Avenue South, 25th Floor**
**New York, N.Y. 10016**

Cara M. Brownell

**CARA M. BROWNELL**

Sworn to before me this
15th day of day of June, 2007

Judith A. Stoll
Notary Public

JUDITH A. STOLL
NOTARY PUBLIC, State of New York
No. 01ST4655284
Qualified in New York County
Commission Expires Dec. 31, ~~19~~ 2009